ELK FORK OIL & GAS CO. v. JENNINGS et al.

FOSTER v. ELK FORK OIL & GAS CO.

(Circuit Court, D. West Virginia. December 22, 1898.)

1. OIL AND GAS LANDS—FUNDS FOR DEVELOPMENT.

Pending the determination of the title to certain oil lands, the court appointed a receiver to take charge of and develop the property, the necessary funds to be furnished by the title claimants, with the understanding between them that they were to be refunded to them from the sales of oil, should the same be sufficient. *Held* that, the title to the land having been found to be in one claimant, the other was entitled to such reimbursement.

2. RECEIVERS—COSTS.

The fact that two claimants under oil leases, at whose instance a receiver has been appointed, fail to sustain their claims, will not necessarily require that the costs of the receivership shall be charged to them, rather than to the funds in court, which are part of the subject of the receivership.

W. P. Hubbard, for Elk Fork Oil & Gas Co. and L. A. Brenneman, receiver.

Alfred Caldwell, for E. H. Jennings and others.

B. M. Ambler and A. L. Weil, for George E. Foster.

Henry M. Russell, for C. W. Brockunier, receiver.

V. B. Archer, for W. A. McCosh, receiver.

GOFF, Circuit Judge. This court has heretofore disposed of the main questions involved in these cases. 84 Fed. 839. They are now submitted upon the applications of the receivers for compensation for the services rendered by them; upon the application of George E. Foster for the refunding to him of certain advances made by him to the receivers under orders of the court; and upon exceptions of the Elk Fork Oil & Gas Company and of Receiver Brockunier to the master's report.

Without making special reference to the testimony or to the arguments of counsel based thereon, I conclude that the receivers are entitled to compensation, and that, under the circumstances applicable to the individual services of each receiver,—keeping in view the time they were respectively employed in the discharge of their duties, as well as the responsibilities they assumed,—an allowance of $200 per month to McCosh, and of $300 per month to Brockunier, during the time they respectively served as receivers, will be fair to them and just to the parties in interest.

Under certain orders of the court, made on the 13th of April, 1897, and on the 20th of May of that year, George E. Foster, defendant in one suit and complainant in the other, and also the Elk Fork Oil & Gas Company, complainant in the original suit and defendant in the cross bill, made advances of money and materials to Receiver Brockunier, to be used by him in the development of the property in controversy; the former to the amount of $28,119.56, and the latter in the sum of $17,000. Since these advancements were so made, this court has decided the questions relating to the title to the leases in controversy between the different parties to this litigation, and as the result thereof the said Elk Fork Oil & Gas Company has been given the pos-

session of the land described in the same. That company, having the title and the possession of the property, and being entitled to the production from it, and also the funds in the hands of the court coming therefrom, makes no application to have refunded to it the advancements made by it; but Foster, who is quite differently situated, having lost his title to and the possession of said lands for oil purposes, as also any interest in the fund in court, requests that he be reimbursed the full amount of his advancements. The Elk Fork Oil & Gas Company objects to such reimbursement of Foster, and insists that the orders appointing the receivers, as well as those authorizing the advancement of money and materials, were irregular, and are invalid because of the fact that notice was not given to it prior to the entry of said orders that a receiver would be asked for and also authority to borrow money on the credit of the property be requested of the court.

On the 13th of April, 1897, the Elk Fork Oil & Gas Company moved the court for an injunction against Foster, and for the dissolution of an injunction which Foster had obtained from this court on the 6th of April, 1897, against it, which said motions were argued by the counsel of all the parties in interest, and taken under advisement. The court (Judge JACKSON), without passing on those motions, appointed Charles W. Brockunier receiver of the oil and gas rights in the 50 acres of the B. F. Hawkins lease, and the court so acted without any of the parties having asked for the appointment of a receiver. As the case then stood, the Elk Fork Oil & Gas Company had an injunction (the same having been granted by the circuit court of Tyler county, W. Va., before the case was removed to this court) by which Jennings, Guffey, and others were restrained from taking possession of any part of the land in controversy, and at the same time Foster had a restraining order which prevented said company from proceeding with the development of the leases, while the operations of adjoining owners were injuring the interests of the true owners of the leases in dispute. Thus, all of the claimants were prohibited from searching for oil, though all of them were insisting on their right so to do, and advising the court that the delay in doing so was most detrimental to their leasehold interests and to the rights of their lessors. It was under these circumstances that the court concluded that it would retain the possession and prosecute the development, under the impartial management of its receiver. It did not then appear to the court— for it was not then shown by the record—that the Elk Fork Oil & Gas Company was the legal owner of the property; and it is worthy of remark that, without the aid of the evidence subsequently placed in the record, the Elk Fork Oil & Gas Company would not have been entitled to the decree rendered in its favor, for the court could not have presumed either the forfeiture or the abandonment of the leases given to Johnston, whose assignees were before the court claiming their validity. The said oil company insisted that the Johnston leases were void, because, it is alleged, of the failure of the lessee and those claiming under him to do certain of the material things set forth in, and made part of, the contract of lease. The questions then presented to the court were not matters of law alone, but they were mixed questions

of law and fact. The court, therefore, declined to give the possession to any one of the claimants; for, with the conflicting interests of the various adjoining leaseholders, that would have been inequitable, even though bond had been required. Foster was the owner of leases located near to, and some of them adjoining, the territory in dispute, and it was for this reason that the other claimants dreaded to see the possession go to him, for they presumed that he would so conduct his development as to cause it to inure to the benefit of his separate and undisputed holdings. Likewise also did Jennings, Guffey, and the Elk Fork Oil & Gas Company hold leases similarly situated, in which Foster was not interested, and he, I presume, had the same right to fear them that they had to dread him. The subsequent developments, as shown by the testimony, demonstrate that the conclusion reached by the court to appoint a receiver was, as the case was then presented, the wisest plan, consistent with the conflicting interests, that could have been adopted, though likely it would have been better for, and less expensive to, the Elk Fork Oil & Gas Company had it then been placed in possession. This litigation is not without its hardships,—misfortunes to both the successful as well as the losing parties,—and yet in this regard I do not know that it is peculiarly exceptional. The court regrets that the expenses attending the receivership have been so heavy, and that the other costs amount to the large sum that they do, and yet the expenditures seem to have been unavoidable, and are to be attributed to the importance and magnitude of the litigation. Surely, the Elk Fork Oil & Gas Company will not complain because a small part of its abundant supply of oil has been used as a lubricant on the machinery from which has been evolved the incandescent light by which it reads its title clear to all of the now well-developed property for which it has contended.

It will not be necessary to further consider the different orders of the court relating to the receivers, extending their jurisdiction over other leases, and providing for the advancements which were made to one of them, as, from the conclusion I have reached, it will be unprofitable to do so. I think it is clear that the advancements were made under the court's orders and with the understanding between the parties that the amounts so advanced should be returned to those making them, provided the sales of oil produced from the property, under the developments authorized by the court, realized a sum sufficient for that purpose. That also was the evident intention of the court, in which the parties manifestly acquiesced. The fact that Foster lost title to the leases claimed by him is no reason why he should not, under the circumstances of this case, have the advancements made by him refunded, as contemplated by the court's order. Had the Elk Fork Oil & Gas Company failed in its contention concerning the leases in suit, still it would have been entitled to a decree in its favor for the $17,000 advanced by it to Receiver Brockunier.

It follows from what I have said that the allowances to the receivers will be paid out of the funds under the control of the court. While it is true that Receiver McCosh was appointed on the motion of defendants Jennings and Guffey, and that said parties have failed

to sustain their claims relative to the leases over which said receiver had jurisdiction, still their action in the matter was not of that character, nor the circumstances attending this case such, as would justify the court in charging to them the costs incurred by that receivership. The court had, previous to the appointment of McCosh, indicated the policy it would pursue, and said defendants in making the motion mentioned were in fact but accepting the invitation which had been judicially extended to them. After the action of the court, on the 13th of April, 1897, when Brockunier was designated as receiver, it would have been useless, if not disrespectful, for said defendants to have applied, on the 17th of that month, for an injunction, founded on grounds that were substantially the same as those set out in the applications which had but recently been rejected. While it is true, as contended for by counsel for the Elk Fork Oil & Gas Company, that it is sometimes the duty of a court to require the party who has, on allegations found to be untrue, improperly procured the appointment of a receiver, to pay the expenses occasioned thereby, including the allowances made by the court to such receiver, still, in my opinion, it would not be proper to apply that rule of law to this case, for the reasons I have already mentioned.

The exception of Receiver Brockunier to the master's report is sustained, as the true balance in his hands is $26,588.01, and not $26,819.83, as returned by the master.

The conclusion that I have reached renders it unnecessary for me to consider other questions raised by the exceptions of the Elk Fork Oil & Gas Company to the master's report, and as I am unable to see how, under the pleadings as they now are, the information asked for and insisted upon by that company can be used in this cause, I shall overrule said exceptions. If either misfeasance or malfeasance is to be insisted upon concerning the conduct of Receiver Brockunier, the charges should be duly filed, and an opportunity given him to reply, after which the case can be referred for the taking of testimony. The matters relating to the allowance of compensation to the counsel for the receivers and the costs connected with the master's report are reserved for further consideration.